FILED ___ LODGED
___ RECEIVED ___ COPY

SEP 2 4 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Sarah Nicole Kelley,<br><br>    Defendant. | CR-19-01143-PHX-JJT(ESW)<br><br>**INDICTMENT**<br><br>VIO:  18 U.S.C. § 1343<br>(Wire Fraud)<br>Counts 1-24<br><br>18 U.S.C. § 1957<br>(Money Laundering)<br>Counts 25-32<br><br>18 U.S.C. §§ 981(a)(1)(c) & 982<br>28 U.S.C. § 2461(c)<br>Forfeiture Allegation |

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

1. The defendant, SARAH NICOLE KELLEY, was a licensed real estate agent who portrayed herself as a successful real estate investor and recruited others to partner with her on real estate investments. By late 2016, KELLEY was in financial trouble as a result of certain failed investments. Some of KELLEY's clients/investors claimed KELLEY made material misrepresentations during their real estate transactions and several obtained civil judgments against KELLEY.

2. By late 2016, KELLEY's own personal real estate investments also were in jeopardy and KELLEY was facing foreclosure on certain properties. In particular, KELLEY needed to pay $180,000 by January 17, 2017, or her lender, Capital Fund 1, would foreclose on two of KELLEY's investment properties.

3. Around the same time she was facing foreclosure on her investment properties, KELLEY learned J.L. had recently received an inheritance of approximately $185,000. KELLEY lied to J.L. to get J.L.'s inheritance money. KELLEY told J.L. that she was a successful real estate investor and never mentioned her recent civil judgments or pending foreclosures. KELLEY offered to teach J.L. how to invest her inheritance in real estate and help J.L. achieve financial stability and ultimately retire by investing her inheritance in real estate projects.

4. KELLEY proposed that she and J.L. first partner on a real estate project to help J.L. learn about investing. The project involved buying a vacant lot on Lucky Lane in Coolidge, Arizona, on which they would build a "spec home." When the home was completed and the property sold, KELLEY said she would repay J.L. her initial investment plus a share of the profit.

5. On or about January 10, 2017, J.L. invested $55,000 into the joint investment project proposed by KELLEY. J.L. sent the money by wire transfer to KELLEY's company, Canyon Construction. J.L. understood the money would be used to buy the vacant lot. But KELLEY never purchased the vacant lot. Instead, she applied J.L.'s funds to her past-due loans with Capital Fund 1.

6. A few days later, KELLEY fabricated another lie to get more of J.L.'s inheritance. KELLEY told J.L. that KELLEY's sister, A.R., was in financial trouble and facing foreclosure on her home, which would result in A.R. and her children becoming homeless. KELLEY asked J.L. if she could borrow $130,000 to save A.R.'s home from foreclosure. J.L. agreed to loan KELLEY $130,000 for this purpose. KELLEY promised to repay J.L. in full within 30 days. KELLEY directed J.L. to wire $130,000 to Capital Fund 1 by January 17, 2017.

7. On or about January 17, 2017, J.L. wired $130,000 to Capital Fund 1, believing it was going to save A.R.'s home from foreclosure. In fact, based on the wire instructions KELLEY provided to J.L., the $130,000 J.L. sent to Capital Fund 1 was used

to pay off the loans on KELLEY's two investment properties that were at risk of foreclosure. Unbeknownst to J.L., A.R.'s home was never in foreclosure proceedings.

8. After her loans were paid in full, KELLEY began to market for sale the two properties for which J.L.'s money paid off the loans. KELLEY sold one of the properties on or about April 28, 2017; she sold the other on or about November 3, 2017. KELLEY kept the proceeds from both sales for her own use. KELLEY has never re-paid the $55,000 J.L. invested with her or the $130,000 J.L. loaned her.

9. Throughout this time, and continuing through at least the end of 2017, KELLEY continued to lie to J.L. about how J.L.'s funds had been used and KELLEY promised on numerous occasions that she would soon re-pay J.L. On several occasions, KELLEY took J.L. to a vacant lot on Lucky Lane in Coolidge, Arizona, indicating it was the vacant lot purchased with J.L.'s investment of $55,000. KELLEY promised construction would begin soon and even showed J.L the purported house plans. As time passed and construction still had not started, KELLEY made excuses for the delay, including blaming the Pinal County Building Safety Department for not approving the building permits. J.L. later learned that KELLEY never applied for a building permit for any home on Lucky Lane and there is no record of KELLEY purchasing a lot on Lucky Lane.

**COUNTS 1-24**
**Wire Fraud**
**(18 U.S.C. § 1343)**

10. The factual allegations above are incorporated herein by reference and re-alleged as though fully set forth herein.

11. From on or about January 2017 through at least December 2017, in the District of Arizona and elsewhere, defendant SARAH NICOLE KELLEY devised and intended to devise a scheme to defraud and obtain money and property from J.L. by means of materially false and fraudulent pretenses and representations.

12. On or about each of the dates set forth below, in the District of Arizona and elsewhere, KELLEY caused to be transmitted by means of wire communication in interstate commerce certain writings, pictures, signals, and sounds, each transmission constituting a separate count.

| Count | Date | Interstate Wires |
|---|---|---|
| 1 | 1/9/2017 | Facebook message from KELLEY to J.L. and response from J.L. to KELLEY regarding flipping houses |
| 2 | 1/10/2017 | Multiple Facebook messages between KELLEY and J.L. regarding flipping houses and KELLEY provides J.L. with wire transfer information for investment of $55,000 in joint real estate project |
| 3 | 1/10/2017 | Wire transfer of $55,000 from J.L. to KELLEY's Canyon Construction account ending -9462 for investment in joint real estate project |
| 4 | 1/17/2017 | Wire transfer of $130,000 from J.L. to Capital Fund 1's account ending -4103 for loan to save A.R.'s house from foreclosure |
| 5 | 1/25/2017 | Multiple Facebook messages between KELLEY and J.L. regarding repayment of loan and J.L. provides KELLEY with wire transfer information for repayment of loan |
| 6 | 2/7/2017 | Deed of Release and Full Reconveyance recorded by Capital Fund 1 with Pinal County Recorder's Office (doc. 2017-008345) for KELLEY's property paid with J.L.'s funds |
| 7 | 2/7/2017 | Deed of Release and Full Reconveyance recorded by Capital Fund 1 with Pinal County Recorder's Office (doc. 2017-008346) for KELLEY's property paid with J.L.'s funds |
| 8 | 2/7/2017 | Deed of Release and Full Reconveyance recorded by Capital Fund 1 with Pinal County Recorder's Office (doc. 2017-006423) for KELLEY's property paid with J.L.'s funds |
| 9 | 2/7/2017 | Deed of Release and Full Reconveyance recorded by Capital Fund 1 with Pinal County Recorder's Office (doc. 2017-017316) for KELLEY's property paid with J.L.'s funds |
| 10 | 4/11/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 11 | 4/13/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 12 | 4/17/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |

| Count | Date | Interstate Wires |
|---|---|---|
| 13 | 4/19/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 14 | 4/20/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 15 | 4/21/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 16 | 4/25/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 17 | 4/26/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 18 | 5/23/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 19 | 5/25/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 20 | 6/7/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 21 | 6/29/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 22 | 7/7/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 23 | 7/14/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |
| 24 | 7/21/2017 | Multiple Facebook messages between KELLEY and J.L. regarding KELLEY's promise to re-pay J.L. |

All in violation of Section 1343 of Title 18 of the United States Code.

## COUNTS 25-32
### Money Laundering
### (18 U.S.C. § 1957)

13. The factual allegations from the paragraphs above are incorporated herein by reference and re-alleged as though fully set forth herein.

14. On or about each of the dates set forth below, in the District of Arizona and elsewhere, defendant SARAH NICOLE KELLEY did knowingly engage and attempt to engage in a monetary transaction, by through or to a financial institution, affecting

- 5 -

interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud.

| Count | Date | Originating Account | Receiving Account | Amount | Transaction |
|---|---|---|---|---|---|
| 25 | 1/17/2017 | KELLEY's account (-9462) | Capital Fund 1's account (-4103) | $40,442.30 | Wire transfer (J.L.'s investment) |
| 26 | 5/1/2017 | Driggs Title Company | KELLEY's account (-5717) | $33,273.77 | Wire transfer (sale proceeds) |
| 27 | 5/1/2017 | KELLEY's account (-5717) | KELLEY's account (-8182) | $30,000.00 | Wire transfer (sale proceeds) |
| 28 | 11/28/2017 | Pioneer Title Agency | KELLEY's account (-4293) | $85,731.09 | Cashier's check (sale proceeds) |
| 29 | 12/1/2017 | KELLEY's account (-4293) | KELLEY's account (-5013) | $40,000.00 | Cashier's check (sale proceeds) |
| 30 | 12/14/2017 | KELLEY's account (-4293) | KELLEY's account (-5901) | $20,000.00 | Wire transfer (sale proceeds) |
| 31 | 12/15/2017 | KELLEY's account (-5901) | KELLEY's account (-4293) | $15,000.00 | Wire transfer (sale proceeds) |
| 32 | 12/18/2017 | KELLEY's account (-4293) | Custom Landscape Material | $20,000.00 | Wire transfer (sale proceeds) |

All in violation of Section 1957 of Title 18 of the United States Code.

**FORFEITURE ALLEGATIONS**

15. The allegations from the paragraphs above are incorporated herein by reference.

16. Pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), upon conviction of the offenses in violation of 18 U.S.C. § 1343 set forth in Counts 1-24 of this indictment, KELLEY shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

17. Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of the offense in violation of 18 U.S.C. § 1957 set forth in Counts 25-32 of this indictment, KELLEY shall forfeit to

the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

18. The property to be forfeited includes, but is not limited to, the following: a sum of money equal to at least $185,000 in United States currency, representing the proceeds of the offenses.

19. If any of the property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

All pursuant to Sections 981(a)(1)(c) and 982(a)(1) of Title 18, and Section 2461(c) of Title 28, of the United States Code.

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date: September 24, 2019

MICHAEL BAILEY
United States Attorney
District of Arizona

s/
M. BRIDGET MINDER
Assistant U.S. Attorney